

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

R. ALEXANDER ACOSTA, Secretary
of Labor, United States Department of Labor,

        Plaintiff,

v.

ROBERT J. FIASCONE, PATRICK ADAMS
TONINA COZZO, VIVIENNE BAILEY
and the NATIONAL ALLIED WORKERS
UNION LOCAL 831 INSURANCE
TRUST FUND,

        Defendants.

CIVIL ACTION

Case No. 1:17-cv-04285

Hon. Rebecca Pallmeyer

---

## CONSENT ORDER AND JUDGMENT

Plaintiff R. Alexander Acosta, Secretary of Labor, United States Department of Labor ("Secretary"), pursuant to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq.*, filed a complaint against defendants Robert Fiascone, Patrick Adams, Tonina Cozzo, and Vivienne Bailey (collectively, "Defendants") alleging breaches of ERISA §§ 404(a)(1)(A), 404(a)(1)(B), 404(a)(1)(D), 406(a)(1)(C), 406(a)(1)(D), 412(a) with respect to the National Allied Workers Union Local 831 Insurance Trust Fund ("Fund").[1]

Defendants waived service of process of the complaint and admitted to the jurisdiction of this Court over them and the subject matter of this action. Defendants neither admit nor deny the remaining allegations in the Secretary's Complaint.

The Secretary and Defendants have agreed to resolve all matters in controversy in this action between them (except for the imposition by the Secretary of any penalty pursuant to

---

[1] The Fund is named as a defendant herein pursuant to Federal Rule of Civil Procedure 19(a) solely to assure that complete relief can be granted.

1

ERISA § 502(*l*), 29 U.S.C. § 1132(*l*), and any proceedings related thereto), and said parties do now consent to entry of a Consent Order and Judgment ("Judgment") by this Court in accordance therewith.

The parties agree that, if the Secretary of Labor assesses a penalty pursuant to ERISA § 502(/) in connection with the violations alleged in this matter, the "applicable recovery amount" shall include all amounts paid in accordance with this Judgment.

Upon consideration of the record herein, and as agreed to by the parties, the Court finds that it has jurisdiction to enter this Judgment.

**IT IS THEREFORE ORDERED** that:

1. Defendants shall not violate the provisions of Title I of ERISA, 29 U.S.C. § 1001 *et seq.* during any time that they act as fiduciaries.

2. Within 14 days of the entry of this Judgment, Defendants shall cause a total of $1,113,636.36 ("Restoration Amount") to be paid to the Fund. Upon receipt the Fund shall immediately place these monies into one of two separate interest-bearing trust accounts at a bank, other financial institution, or asset custodian, as follows:

   a. The Fund shall place $813,636.36 in an account, of the type described above, in the name of the Fund entitled "National Allied Workers Union Local 831 Insurance Trust Fund — Claims Reserve Account."

   b. The Fund shall place $300,000 in an account, of the type described above, in the name of the Fund entitled "National Allied Workers Union Local 831 Insurance Trust Fund — Independent Fiduciary Payment Account."

c.  Defendants shall provide the Secretary with satisfactory proof of the payment to the Fund and the placement of monies in the accounts described in paragraph 2 above to Jeffrey Monhart, Regional Director, Chicago Regional Office, U.S. Department of Labor, Employee Benefits Security Administration, 230 S. Dearborn Street, Suite 2160, Chicago, IL 60604 ("EBSA Regional Director") within twenty-one days of payment.

3.  Defendants Patrick Adams and Tonina Cozzo agree to retire as Fund trustees no later than July 31 30, 2018. After their retirements, Defendants Adams and Cozzo further agree that they will not thereafter serve or act as fiduciaries or service providers with respect to the Fund.

4.  Defendants Robert Fiascone and Vivienne Bailey agree to retire as Fund trustees no later than December 31, 2018. After their retirements, Defendants Fiascone and Bailey further agree that they will not thereafter serve or act as fiduciaries or service providers with respect to the Fund.

5.  Defendants have selected, the Secretary has not objected to the appointment of, and the Court hereby appoints, William J. Einhorn, Esquire to act as the Independent Fiduciary of the Fund ("Independent Fiduciary"). The Independent Fiduciary shall be the sole Plan Administrator of the Fund during his appointment, and he shall have all the rights, powers, duties, and obligations as the Fund's Plan "Administrator" as that term is defined within under ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A). After the Independent Fiduciary's tenure as Plan Administrator has ended pursuant to paragraphs 8 or 9 below, all future Plan Administrators of the Fund shall be required to maintain all obligations and responsibilities established by the Independent Fiduciary under paragraphs 6(g)(i)-(x) below.

6.  The Independent Fiduciary shall also have the following powers, duties and responsibilities:

      a.      The Fund represents that it is currently operating as a multiemployer plan as that term is defined by ERISA § 3(37), 29 U.S.C. § 1002(37),[2] and intends to continue to operate as such.

      i.      Within ninety days of the entry of this Judgment, the Independent Fiduciary shall determine whether the Fund meets the definition of a "multiemployer plan" under ERISA § 3(37), 29 U.S.C. § 1002(37), and the requirements of 29 C.F.R. § 2510.3-40(a), (b), and (c).

      ii.      Within ten days of making the determination described in paragraph 6(a)(i) above, the Independent Fiduciary shall notify the EBSA Regional Director of his determination and the basis for that determination.

      iii.      If the Independent Fiduciary determines the Fund does not meet the definition of a "multiemployer plan" as described in paragraph 6(a)(i) above, he shall:

      a)      Inform the EBSA Regional Director in writing, within thirty days after the date of the notice he provided to EBSA in paragraph 6(a)(ii), of the steps the Independent Fiduciary intends to take to ensure the Fund either meets the definition of a multiemployer plan or operates in compliance with all applicable state and federal laws as a "multiple employer welfare arrangement" under ERISA § 3(40), 29 U.S.C. § 1002(40);

      b)      Inform the EBSA Regional Director in writing, within thirty days of the notice provided under paragraph 6(a)(iii)(a) above, of all the steps the Independent Fiduciary took to ensure the Fund either meet the definition of a multiemployer plan or, otherwise, operate in compliance with all applicable state and federal laws as a "multiple employer welfare arrangement" under ERISA § 3(40), 29 U.S.C. § 1002(40); and

---

[2] Nothing in this agreement shall be construed or taken as an affirmation by the Secretary or this Court of the Defendants' position that this Fund has operated in the past or is currently operating as a multiemployer plan as that term is defined in ERISA.

          c)      Within thirty days of notifying EBSA of the steps taken as described in paragraph 6(a)(iii)(b) above, the Independent Fiduciary shall again determine if the Fund either meets the definition of a multiemployer plan or, otherwise, operates in compliance with all applicable state and federal laws as a "multiple employer welfare arrangement" under ERISA § 3(40), 29 U.S.C. § 1002(40). The Independent Fiduciary shall inform the EBSA Regional Director of his determination in writing within three days of the determination made pursuant to this paragraph.

          iv.      If within thirty days of taking the steps described in 6(a)(iii)(b) above, the Fund still does not meet the definition of a multiemployer plan or, otherwise, does not operate in compliance with all applicable state and federal laws as a "multiple employer welfare arrangement" under ERISA § 3(40), 29 U.S.C. § 1002(40), the Independent Fiduciary shall immediately notify the Court, the Secretary, the relevant State insurance regulatory agencies, and the Fund's participants in writing of the Fund's failure to comply with all applicable state and federal laws as a "multiple employer welfare arrangement" under ERISA § 3(40), 29 U.S.C. § 1002(40).

      b.      The Independent Fiduciary shall review all of the plan documents governing the Fund and all of the Fund's current contracts with service providers to determine whether they are in the best interest of the Fund's participants and beneficiaries and comply with ERISA. If the Independent Fiduciary determines that any contracts are not in the best interest of the Fund's participants and beneficiaries or, do not comply with ERISA, then the Independent Fiduciary has the authority to renegotiate the contracts so they comply with ERISA or terminate the contracts.

      c.      All actions taken by the Board of Trustees of the National Allied Workers Union Local 831 Insurance Trust ("Board"), with the exception of payments to the Independent

5

Fiduciary made pursuant to the procedure described in paragraph 6(k) below, require ratification by the Independent Fiduciary prior to becoming final Board actions. All Board actions, which are not ratified by the Independent Fiduciary, shall be deemed null and void. To determine whether or not an action shall be ratified:

      i.      The Independent Fiduciary shall monitor the actions of the Fund's trustees by attending all Board meetings (either in person, by telephone, or by video conference, as appropriate) and independently review all decisions the Fund's trustees propose to make on behalf of the Fund.

      ii.      The Fund's trustees shall inform the Independent Fiduciary in writing of all proposed decisions thirty days before the decision date. The Fund's trustees shall also provide the Independent Fiduciary with any documentation he requests regarding a decision or a proposed decision within fourteen days of his written request.

      d.      The Independent Fiduciary shall have full access to all data, information and calculations in the Fund's possession or under its control, including that information contained in the records of the Defendants, the Board, and the Fund's service providers regarding the Fund provided, however, that any disclosure of "Protected Health Information" shall be made only in compliance with the requirements of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Public Law 104-191, and the regulations promulgated thereunder. Defendants and the Board shall provide any Fund information requested by the Independent Fiduciary as soon as practicable, but no later than 10 business days after such request is made by the Independent Fiduciary.

      e.      The Independent Fiduciary may retain such persons and firms, including, but not limited to, accountants, actuaries, and attorneys, as may be reasonably required to perform his duties hereunder.

   f. The Independent Fiduciary shall obtain bonding in an amount that meets the requirements of ERISA § 412, 29 U.S.C. § 1112. The Independent Fiduciary may obtain his own separate bonding or be added to the Fund's existing fidelity bond. The costs incurred by the Independent Fiduciary in obtaining such bonding shall be paid by the Fund.

   g. The Independent Fiduciary shall implement written policies and procedures for the Fund to ensure that the Fund functions in the best interest of its participants and beneficiaries and is fully in compliance with ERISA during and after the Independent Fiduciary's tenure. Such written policies and procedures shall include, but not be limited to, the following:

    i. Written policies and procedures to establish a Request for Proposal ("RFP") process to ensure the Fund pays no more than "reasonable compensation," as that term is used in ERISA § 408(b)(2), 29 U.S.C. § 1108(b)(2), to service providers;

    ii. Written policies and procedures to ensure that all arrangements with parties in interest, including fiduciaries, for office space, or legal, accounting, or other services necessary for the operation of the Fund are (1) necessary for the operation of the Fund; (2) furnished under a contract or arrangement that is reasonable; and (3) no more than reasonable compensation is paid, as required by ERISA § 408(b)(2), 29 U.S.C. § 1108(b)(2) and 29 C.F.R. 2550.408b-2;

    iii. Written policies and procedures to ensure the Fund's annual administrative expenses are reasonable on a per-member per-month basis and as a percentage of insurance premium dollars spent on healthcare benefits;

    iv. Written policies and procedures to ensure the Fund's service providers are prohibited from accepting any direct or indirect compensation from a third party as

a result of their relationship with the Fund unless the arrangements satisfies all the requirements of an applicable Prohibited Transaction Exemption, such as PTE 84-24;

       v.       Written policies and procedures to ensure service providers provide services and receive payments only in accordance with their contractual obligations with the Fund;

       vi.       Written policies and procedures to establish annual premium rates, funding requirements, and adequate reserves (including the three-month claims reserves described in paragraph 10 below) for the Fund on annual basis so that the Fund will have sufficient funding to pay Fund expenses, including all claims and administrative expenses. These procedures shall require, at a minimum, the use of an actuary who utilizes Actuarial Standards of Practice promulgated by the Actuarial Standards Board to establish such premium rates, funding requirements, and adequate reserves;

       vii.       Written policies and procedures to ensure participating employers who are parties in interest to the Fund under ERISA § 3(14), 29 U.S.C. § 1002(14), are not allowed to pay lower contribution rates than similarly-situated participating employers;

       viii.       Written policies and procedures to ensure decisions made by the Fund's trustees are sufficiently explained in writing in the Fund's meeting minutes by discussions on the record, attachments to the meeting minutes, and other necessary means;

       x.       Written policies and procedures to ensure the number of trustees required by the Fund's governing documents are appointed and the provisions in the governing documents for appointing trustees, including the trustees' selection of a Chairman and Secretary are followed;

    xi.  Written policies and procedures to ensure the Fund's "plan officials," as that term is defined by ERISA § 412(a), 29 U.S.C. § 1112(a), maintain adequate fidelity bond coverage as required by ERISA § 412, 29 U.S.C. § 1112.

    xii.  All written policies and procedures described in paragraphs 6(g)(i)-(x) above shall be completed and implemented by the Fund no later than 360 days after the entry of this Judgment.

  h.  The Independent Fiduciary shall send quarterly reports to the EBSA Regional Director. Such reports shall commence no later than 90 days after the entry of this Judgment and continue every 90 days thereafter during the Independent Fiduciary's appointment. Such quarterly reports shall include:

    i.  A summary of all steps taken or proposed to be taken to implement the written policies and procedures described in paragraphs 6(g)(i)-(xi) above; copies of all final written policies and procedures described in paragraphs 6(g)(i)-(xi) above adopted by the Fund to date;

    ii.  The Fund's total monthly administrative expenses;

    iii.  The Fund's monthly administrative expenses on a per-member per-month basis and as a percentage of healthcare benefits paid;

    iv.  The monthly balances in the "National Allied Workers Union Local 831 Insurance Trust Fund — Claims Reserve Account"; and

    v.  An analysis of when the Fund's Claims Reserve Account will have sufficient assets to meet the amount required as calculated in accordance with paragraphs 10 and 11 below.

    vi.  In the event the Secretary has an objection to or concern with a quarterly report set forth in paragraph 6(h) above, the EBSA Regional Director shall contact the Independent Fiduciary in writing to discuss his objection(s) and/or concern(s) within 15 days of

receiving the quarterly report. If the Secretary's objection(s) and/or concern(s) cannot be resolved, the Secretary may file the quarterly report and his objections and/or concerns with the Court to resolve the issue.

      i.      The Independent Fiduciary shall have sole control over the "National Allied Workers Union Local 831 Insurance Trust Fund — Claims Reserve Account."

      j.      The Independent Fiduciary shall create and implement a prudent policy and procedure to hold or invest the monies within the Independent Fiduciary Payment Account and the Claims Reserve Account in accordance to ERISA.

      k.      For the services performed pursuant to this Judgment, the Independent Fiduciary shall receive compensation not to exceed $250 per hour for fees plus expenses reasonably and necessarily incurred, the estimated amount of which is set forth in **Exhibit A**, attached hereto. Prior to obtaining payment for services and expenses authorized pursuant to this Judgment, the Independent Fiduciary shall present to the Court every ninety days, beginning no later than 90 days after the date of entry of this Judgment, an itemized quarterly fee application, including hourly rates of pay, and dates and hours of work, accompanied by a description of work performed, as well as an itemized statement of expenses. The Independent Fiduciary shall provide to the EBSA Regional Director a copy of said fee application when it is filed with the Court. Absent objection from the Secretary, Defendants, or new Fund trustees[3] within fifteen business days, the fee application shall be deemed approved and shall be paid by the Fund's trustees from the "National Allied Workers Union Local 831 Insurance Trust Fund — Independent Fiduciary Payment Account." If the Secretary or Defendants objects, the Court will

---

[3] The Independent Fiduciary shall not have veto power over the Fund's trustees objection to his fee petition.

decide whether the Independent Fiduciary's request should be granted. If the Independent Fiduciary expects that his fees will exceed the monies currently in the Independent Fiduciary Payment Account, he may petition the Court to order the Fund's trustees to add additional monies to this account.

l. Other than through the process identified in paragraph 6(k) above, the Independent Fiduciary shall not receive any compensation directly or indirectly from the Fund and shall not perform any services other than those identified in this Judgment for the Fund. Under no circumstance shall the Independent Fiduciary receive compensation from any "party in interest" to the Fund as that term is defined at ERISA § 3(14), 29 U.S.C. § 1002(14) in relation to the duties, responsibilities, and services he provides to the Fund under this Judgment.

7. The Fund's trustees shall have sole control over the "National Allied Workers Union Local 831 Insurance Trust Fund — Independent Fiduciary Payment Account." In the event that the Independent Fiduciary's appointment terminates and no replacement is required pursuant to paragraph 8 or 9 below, any remaining monies in the Independent Fiduciary Payment Account shall be transferred to the Claims Reserve Account.

8. The Independent Fiduciary's appointment shall terminate upon the first of the following events to occur: 1) removal by the Court; 2) resignation after finding an acceptable replacement, agreed to by all parties and approved by the Court, or 3) three years after the date of entry of this Judgment.

9. If the Independent Fiduciary determines his services are no longer required by the Fund at any point two years after, but prior to three years after, the date of entry of this Judgment, the Independent Fiduciary shall notify the EBSA Regional Director of such determination. If, within fifteen days of being notified, the Secretary does not notify the Independent Fiduciary of any objections to the Independent Fiduciary's resignation, the

Independent Fiduciary shall file a notice of resignation with the Court. Such notice shall include a certification that the Independent Fiduciary complied with the notification requirements of this paragraph.

10. No later than June 1, 2019, the Fund shall have accumulated, and the Fund shall thereafter maintain, a minimum of a three-month claims reserve for incurred but not reported ("IBNR") claims in the "National Allied Workers Union Local 831 Insurance Trust Fund — Claims Reserve Account." The three-month claims reserve shall be calculated quarterly by multiplying the average monthly claims and administrative costs over a rolling 12 month period with a three month lag by a factor of 3.[4] At the close of the Fund plan year, if the calculation of the most recent three-month claims reserve yields that the account has an excess amount in reserve, the Independent Fiduciary (or upon termination pursuant to paragraph 8 or 9 below, the Fund's trustees) shall determine whether the excess money shall either a) remain in the Claims Reserve Account as excess reserves to increase the Fund's Claim Reserve Account, b) shall be used to pay Fund participants (or their beneficiaries) healthcare benefits, or c) shall be used to pay the Fund's reasonable administrative expenses.

11. Within 90 days after the entry of this Order, the Independent Fiduciary shall provide the Regional Director with a written report that provides the current calculation of the amount required for the Claims Reserve Account, the current assets in the Claims Reserve Account, and outlines the funding policy to fully satisfy the obligations and responsibilities described in paragraph 10 above. Beginning on June 1, 2018, the funding policy shall provide

---

[4] By way of example, as of January 1, the Fund would calculate the monthly average over the 12 months ended the previous September 30 and then multiply by three. That calculation can then be repeated each month, quarter or other full-month based period. The 90 day lag is intended to account for claims that would have been IBNR as of September 30, but likely would have been reported and paid by December 31.

for at least quarterly infusions of cash into the Claims Reserve Account to ensure the Fund meets the reserve level set forth in paragraph 10 above. The Independent Fiduciary shall also provide the Regional Director with quarterly reports of the amount that is currently within the Claims Reserve Account in accordance with paragraph 6(h)(iv) above.

12. The settlement monies paid to the Fund and placed in the "National Allied Workers Union Local 831 Insurance Trust Fund — Claims Reserve Account" (and any interest or other earnings from such monies) shall only be used to build the Claims Reserve Account in accordance with paragraph 10 above, where the fiduciary declares excess money in the Claims Reserve Account, or pay Fund participants' (or their beneficiaries') healthcare benefits or the Fund's reasonable administrative expenses.

11. In the event the Fund is terminated, all monies remaining in the "National Allied Workers Union Local 831 Insurance Trust Fund — Claims Reserve Account" and the "National Allied Workers Union Local 831 Insurance Trust Fund — Independent Fiduciary Payment Account," after the payment of all healthcare claims and reasonable Fund expenses, shall be reimbursed on a pro rata basis based on the number of participants at the time of termination to the Fund's participants.

13. In the event the Independent Fiduciary resigns pursuant to paragraph 9 above, all monies remaining in the "National Allied Workers Union Local 831 Insurance Trust Fund — Independent Fiduciary Payment Account" shall be transferred to the "National Allied Workers Union Local 831 Insurance Trust Fund — Claims Reserve Account" and the National Allied Workers Union Local 831 Insurance Trust Fund — Independent Fiduciary Payment Account" shall be closed.

14. The Fund shall comply with ERISA and all applicable state and federal laws.

15. The National Allied Workers Union Local 831 Insurance Trust Agreement is hereby amended to allow for the provisions of this Judgment, which shall be attached to the National Allied Workers Union Local 831 Insurance Trust Agreement as an amendment.

16. Within 10 business days of the entry of this Judgment, Defendants shall obtain bonding in an amount that meets the requirements of ERISA § 412, 29 U.S.C. § 1112.

17. This Judgment provides full, final, and complete judicial resolution of all of the claims and causes of action alleged in the Secretary's Complaint (except for the imposition by the Secretary of any penalty pursuant to ERISA § 502(*l*), 29 U.S.C. § 1132(*l*), and any proceedings related thereto) in this action. Notwithstanding the foregoing, nothing in this Judgment shall be deemed to waive any claim by the Secretary relating to the obligations set forth in this Judgment.

18. Except for the obligations set forth in this Judgment, the Secretary and his agents, representatives, assigns, predecessors and successors in interest, acting in their official capacities, do hereby waive, release, and forever discharge all claims, demands, actions, causes of action, liabilities, or fines (excluding any penalty under § 502(*l*) of ERISA) they may have against Defendants and their directors, officers, attorneys, employees, representatives, assigns, predecessors, and successors in interest based upon the allegations in the Secretary's Complaint in this action.

19. Defendants and their directors, officers, agents, attorneys, trustees, employees representatives, assigns, and predecessors and successors in interest, do hereby release the Secretary and his officers, agents, attorneys, employees, and representatives, both in their individual and governmental capacities, from all actions, claims and demands of whatsoever nature, including those arising under the Equal Access to Justice Act or any statute, rule, or

14

regulation, that relate in any manner to the investigations, filing, prosecution, maintenance, and settlement of the Secretary's Complaint.

20. The Secretary's claims against any other persons are expressly preserved. Nothing in this Judgment shall preclude the Secretary from initiating or continuing any audit or investigation, or from pursuing any claims or actions, against any entities or persons relating to any ERISA-covered plan. Nothing in this Judgment resolves any claims that have been or may be asserted against Defendants by current and former participants of the Fund, or by any other person.

21. Each party represents and warrants that he, she, or it has not assigned all or part of any claim, demand, debt, or cause of action of any kind or nature released in this Judgment to any other person or third party prior to executing this Judgment.

22. Each party agrees to bear his, her or its own attorneys' fees, costs and other expenses incurred by such party in connection with any stage of this proceeding to date including, but not limited to, attorneys' fees which may be available under the Equal Access to Justice Act, as amended.

23. The Court shall maintain jurisdiction over this matter only for purposes of enforcing this Judgment

24. Nothing in this Order is binding on any government agency other than the United States Department of Labor.

DATED _____June 8_____, 2018

_____
HON. REBECCA PALLMEYER
UNITED STATES DISTRICT JUDGE

The parties hereby consent to the entry of this Consent Order and Judgment:

**FOR THE SECRETARY OF LABOR:**

**KATE S. O'SCANNLAIN**
Solicitor of Labor

**CHRISTINE Z. HERI**
Regional Solicitor

s/Mark Henry Ishu                      Dated: 6/6/2018
**MARK HENRY ISHU**
Trial Attorney

s/Kevin M. Wilemon                Dated: 6/6/2018
**KEVIN M. WILEMON**
Trial Attorney

**P.O. ADDRESS:**
Office of the Solicitor
U.S. Department of Labor
230 S. Dearborn St., Room 844
Chicago, IL 60604

**FOR THE DEFENDANTS:**

s/Robert Fiascone                    Dated: 6/4/2018
**ROBERT FIASCONE**

s/Vivienne Bailey                     Dated: 5/22/2018
**VIVIENNE BAILEY**

s/Patrick Adams                      Dated: 6/4/2018
**PATRICK ADAMS**

s/Tonina Cozzo                       Dated: 5/26/2018
**TONINA COZZO**

s/Robert Fiascone           Dated: 6/4/2018
**NATIONAL ALLIED WORKERS UNION**
**LOCAL 831 INSURANCE TRUST FUND**

By: ROBERT FIASCONE, Trustee


s/Vivienne Bailey          Dated: 5/22/2018
**NATIONAL ALLIED WORKERS UNION**
**LOCAL 831 INSURANCE TRUST FUND**

By: VIVIENNE BAILEY, Trustee


s/Patrick Adams          Dated: 6/4/2018
**NATIONAL ALLIED WORKERS UNION**
**LOCAL 831 INSURANCE TRUST FUND**

By: PATRICK ADAMS, Trustee


s/Tonina Cozzo          Dated: 5/26/2018
**NATIONAL ALLIED WORKERS UNION**
**LOCAL 831 INSURANCE TRUST FUND**

By: TONINA COZZO, Trustee


s/Donna B. More          Dated: 6/4/2018
**DONNA B. MORE**
Attorney for Defendants

s/James A. Matthews, III          Dated: 5/23/2018
**JAMES A. MATTHEWS, III**
Attorney for Defendants

**FOR THE INDEPENDENT FIDUCIARY:**

s/William J. Einhorn                              Dated: 5/22/2018
**WILLIAM J. EINHORN**
Independent Fiduciary



## C. The Defendants' Monetary Proposal

### 1. Funding the Independent Fiduciary

Most immediately, there must be a means of funding the work of the independent fiduciary. Assuming he could be in place by January 1, 2018, we believe it to be unlikely that his services would be required for more than two, full years. That would take him through the plan year ending March 31, 2019 and then nine more months beyond that. Of those 104 weeks, we believe that an outside estimate of the time he would be required to devote to Fund matters would be as follows:

>    30 hrs./wk. x  5 weeks = 150 hours
>
>    25 hrs./wk. x  5 weeks = 125 hours
>
>    15 hrs./wk. x 37 weeks = 555 hours
>
>    10 hrs./wk. x 20 weeks = 200 hours
>
>     5 hrs./wk. x 14 weeks =  70 hours
>
>     0 hrs./wk. x 19 weeks =   0 hours
>
>             Total    1,100 hours

Mr. Einhorn has quoted an hourly rate of $250 plus expenses and status as an additional insured under the fiduciary policy. At $250 per hour, that would be a total of $275,000 in time. If we then add an outside estimate of an additional $25,000 in expenses, that is a total of $300,000.

ACTIVE\52055152.v1-11/22/17

EXHIBIT A